Shirley W. Kram, J.
The subjects of the custody petition before this court are Nathalie almost 14 years of age, and Oliver age 10. There is also pending a support petition, which in great measure will be determined by the decision in the custody case.
The parties were married on April 16, 1963, and in 1971 signed a separation agreement, which gave sole and exclusive custody of the children to the mother Odette R. The father, Douglas R. further agreed to furnish rent-free a co-operative apartment he owns as well as support of $350 dollars weekly for the wife and children. The parties were divorced July 29, 1971 by the First Circuit Family Court of Hawaii. The divorce decree incorporated the separation agreement. For the past six years, until the commencement of proceedings in this court, both children have been in the custody of the mother.
There have been intermittent disagreements between the parties during this period. Several years ago, Mr. R. who is Korean, married a young Korean woman and there are two small children of that marriage. The mother Odette R. is French, and the children both attend a French school here in New York City. The children appear to have strong ties to both cultures.
The support proceeding in this court was commenced by Mrs. R. on March 15, 1977 and on June 15, 1977, Douglas R. brought this custody proceeding. He alleges that it would be in the best interests of the children to live with him since Odette R. suffers from a psychiatric disability, thus making her incapable of properly caring for the children.
On June 22, 1977 after a report from the Mental Health Service of this court, the Presiding Judge gave temporary custody of both children to the father pending a full hearing.
The full hearing was held before this court on August 19, 24, 30, September 1 and 2, 1977. Much of the testimony *794 concerned itself with Mrs. R’s mental condition and her ability to care for the children.
The first referral for psychiatric examination was made April 22 when Mrs. R. appeared in court dressed inappropriately and behaved in a bizarre fashion in various parts of the court building and in the courtroom. Dr. Richard Schusker a psychologist employed by the court examined her briefly for the purposes of an emergency evaluation and reported she suffered from "acute schizophrenia with paranoid trends”. A more complete examination was made in June 2, 1977 by Dr. Jerome H. Kessel, court psychiatrist, who stated that in his opinion the earlier diagnosis was made when Mrs. R. was under great stress. His diagnosis was "latent schizophrenia”. He testified that with proper medication she could function very well, as did many other individuals with this illness. In his opinion she could properly care for the children, and the medication would in no way interfere with her functioning.
The court also heard testimony from Dr. Bertraud Jacob, a psychiatrist who has been seeing Mrs. R. in private therapy sessions on a weekly basis for several months. He has prescribed no medication and reports that she will not require prolonged therapy. It is his professional opinion that Mrs. R. is not, nor has she ever suffered from either of the above disorders. He testified that there would presently be evidence of the illness, had the patient been so afflicted.
Further, that she could not have recovered so completely nor so well if the previous diagnosis were accurate. He believes the fact that Mrs. R. was raised in another culture and has some slight difficulty with English at times might have caused a misunderstanding of her problem. Certainly in the courtroom, through several hours of testimony and cross-examination Mrs. R. was composed and functioned well. She has not had any previous history of a serious psychiatric disorder.
The court spent considerable time with the children, speaking to each child separately. The testimony is sealed but available for review. Both children indicate they wish to live with their father, although they both speak lovingly of their mother. Nathalie, an articulate and bright girl gave the court some cogent reasons for her decisions. Oliver seemed more ambivalent about leaving his mother’s home. Both children stated firmly that under no circumstances could they tolerate being separated. The court too concluded that this would be out of the question.
*795 Testimony by various parties indicated in great detail the quality of the children’s lives with their mother. The acute phase of her illness caused their problems, but prior to this she gave them very good and loving care. Their exceptional development is proof of this. Mrs. R. took them on interesting trips, paid for summer camp, dancing classes, extracurricular activities they desired, etc. out of the support moneys provided. She was the mainstay of their lives, as Mr. R. traveled extensively for business reasons and was sometimes out of the country for months. Both children became closer to their father in the past year, although he always evidenced great interest and concern for them. He also has his obligations to his present wife and younger children. Both Nathalie and Oliver like the present Mrs. R. and their half-siblings.
The court must note that the testimony of the children reflect a continued involvement with the mother and guilt about leaving her.
This court is now faced with the dilemma of deciding what is in the best interests of these children, when they obviously require the full involvement of both parents in order to have the security and love they need to flourish. It is this court’s belief that the best interests of these children can be served by awarding joint custody to Douglas R. and Odette R.
Under section 240 of the Domestic Relations Law and section 651 of the Family Court Act this court has the power to award custody to either parent, and so can give such custody jointly to both parents.
Joint custody means giving to both parents an equal voice in the children’s education, upbringing, and general welfare. It is of great importance in this case. Nathalie has indicated that she no longer wishes to attend a French school, as she believes it is inadequate preparation for an American college. Her father apparently agrees and she is hopeful she will persuade her mother. On the other hand, Mr. R. is gone for long periods of time, and his present wife is young (29 years of age), and has the responsibility of two very young children. Nathalie, and Oliver certainly would be better off with their own mother during these periods.
Although joint custody is generally the result of an agreement between the parties, the courts in New York have upon occasion awarded joint custody (see Perotti v Perotti, 78 Misc 2d 131; Woicik v Woicik, 66 Misc 2d 357; Levy v Levy, NYLJ, Jan. 29, 1976, p 11, col 3, p 36, cols 1-5).
*796 In Mullen v Mullen (188 Va 259) a Virginia court awarded joint custody. In its decision it stated (pp 272-273): "The child is entitled to the love, advice, and training of both her father and her mother. Frequent associations, contact, and friendly relations with both of her parents will protect her future welfare if one of the parents should die. It gives recognition to the rights of parents who have performed obligations as parents.”
In Davis v Davis (354 SW2d 526) a Missouri court considers joint custody as a common sense rule in which the welfare of the children will be best served by an arrangement that will enable their association with both parents, this case and the Mullen (supra), case are significant in that they indicate the view that custody awards are to be based on the needs of the children rather than the punishment of the parents.
The Hawaiian divorce decree, incorporating the separation agreement gave sole custody as previously indicated to Odette R. However, the father Douglas R. has been able to show that there has been a material change of circumstances so as to render it in the best interests of these children to modify the original decree. Such material change in conditions are: (1) the mother has had a psychiatric break-down and is still undergoing psychiatric therapy. Her complete recovery, as well as avoiding great stress in the future by sharing responsibility for the children are important factors in her relationship with her children. (2) the father is now remarried with a stable home environment for the children.
The court has taken these considerations as well as the wishes of the children into account in determining this course of action.
It is the decision of this court that the original custody decree is herewith modified to award to both parties joint custody of the children.
It is the hope as well as the direction of the court that the parties consider the best interests and welfare of their children and make all decisions for the benefit of the children jointly.
Further, the physical custody of the children shall be divided between the parents as follows:
Douglas R. shall have physical custody of the children during the school year, the children are to reside in his home. However, if he is away from home for more than two weeks, *797 the children are to live with Odette R in his absence and be in her care and custody. During the period the children are residing with Douglas R., the mother shall have visitation on Saturday from 10 a.m. to 8 p.m., alternate school holidays, and one half of their summer vacation. Neither parent is to take the children out of the country without the consent of the other parent.
Mr. R. will continue to maintain the apartment in which Odette R. resides, as well as the $180 alimony payments. The $170 child support payments shall be paid to Odette R. only when the children are in her care and custody.