802 F.2d 21
 55 USLW 2263, 35 Ed. Law Rep. 71
 Robert E. FAY, Theresa M. Fay, and Thomas R. Fay, by their
natural parent and next friend, Robert E. Fay,
Plaintiffs-Appellants, Cross-Appellees,
v.
SOUTH COLONIE CENTRAL SCHOOL DISTRICT, Gordon M. Ambach, as
he is the Commissioner of Education, State of New York; and
Thomas P. Mitchell, as he is the Superintendent of Schools,
South Colonie Central School District, Defendants-Appellees,
South Colonie Central School District and Thomas P.
Mitchell, Defendants- Appellees, Cross-Appellants.
 Nos. 951, 1056, Docket 85-9009, 85-9033.
 United States Court of Appeals,
Second Circuit.
 Argued April 2, 1986.
Decided Sept. 24, 1986.
 
 Jerome Aaron, Somerville, Mass., for plaintiffs-appellants, cross-appellees.
 Paul J. Laudato, Albany, N.Y. (Tabner and Laudato, Albany, N.Y., of counsel), for defendants-appellees, cross-appellants South Colonie Cent. School Dist. and Thomas P. Mitchell.
 Calvin M. Berger, Asst. Atty. Gen., State of N.Y., Albany, N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., Robert Hermann, Sol. Gen., William J. Kogan, Asst. Sol. Gen., State of N.Y., Albany, N.Y., of counsel), for defendant-appellee Gordon M. Ambach.
 Before OAKES, MESKILL and NEWMAN, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 This is an appeal and cross-appeal from a judgment of the United States District Court for the Northern District of New York, Miner, J. The plaintiffs below were Robert E. Fay (Fay) and his children, Theresa M. Fay and Thomas R. Fay. The defendants were the South Colonie Central School District, its superintendent (hereinafter the district and its superintendent are collectively described as "the school district") and the New York Commissioner of Education. The district court partially granted the plaintiffs' summary judgment motion, holding the school district liable under 42 U.S.C. Sec. 1983 (1982) for denying Robert Fay access to his children's education records, see 20 U.S.C. Sec. 1232g(a)(1)(A) (1982), awarding nominal damages for the denial of access to the records and granting injunctive relief on a pendent state law claim for violation of his rights as a parent with joint legal custody of his children. The court dismissed all of the plaintiff's claims against Commissioner Ambach. It also dismissed Fay's claim under section 1983 that the school district violated Fay's due process right to control the upbringing of his children and his right to equal protection of the laws.
 
 
 2
 For reasons set out below, we conclude that Fay's claim for compensatory damages is barred neither by res judicata nor by the Eleventh Amendment. We affirm the dismissal of the claims against Commissioner Ambach. We also affirm the dismissal of the constitutional claims against the school district, but do so for different reasons than those relied on by the district court. We affirm the portion of the judgment holding the school district liable for denying Robert Fay access to his children's education records but vacate the award of nominal damages for this violation of Robert Fay's federal statutory rights and remand for further proceedings on the issue of damages. Finally, we hold that the district court abused its discretion when it entertained the pendent state law claim and we dismiss the claim.
 
 BACKGROUND
 
 3
 This suit involves an attempt to have the federal courts resolve a dispute that could be more appropriately resolved either by the state courts or by mediation.
 
 
 4
 Under a separation agreement Fay and his ex-wife have joint legal custody of their two children. The children live with Fay during the summer and live with their mother during the school year. The separation agreement further provides that the ex-wife
 
 
 5
 must ... consult with [Fay] concerning ... schooling, relevant to which school [the children] should attend, whether public or private, matters concerning any special education courses which the children may pursue or desire to pursue and further, the [ex-]wife is to provide [Fay] with report cards of the children or photostatic copies thereof....
 
 
 6
 App. at 179. Fay alleges that his ex-wife has failed to comply fully with this provision.
 
 
 7
 Dissatisfied with the operation of this aspect of the separation agreement, Fay tried to get information regarding his children's activities and progress directly from the children's schools. In December 1980 Fay sent a letter to the superintendent of the school district demanding such information. Although Fay's original demand was inchoate, it later became clear that he sought information ranging from standardized test results and accident reports to notices about classroom parties and cafeteria menus. Instead of seeking to accommodate any of the demands, the superintendent responded that the school would "provide information to any person or organization whom the courts decide have a legal right to it." App. at 302-A-18.
 
 
 8
 More letters were exchanged between Fay and the superintendent and in April 1981 the United States Department of Education advised the superintendent of Fay's rights under the Family Educational Rights and Privacy Act, 20 U.S.C. Sec. 1232g (1982) (FERPA). Thereafter, the school district began mailing copies of the Fay children's education records to Fay. The school district continued to refuse to mail to Fay duplicates of all school-related notices mailed to his ex-wife or carried home by his children.
 
 
 9
 In May or June 1981 Fay initiated an appeal of this continuing refusal to the New York Commissioner of Education, Gordon Ambach. See N.Y. Educ. Law Sec. 310 (McKinney 1969 & Supp.1986). In October 1981 Commissioner Ambach invoked a regulation promulgated under his statutory authority "[t]o regulate the practice" in such appeals, N.Y.Educ.Law Sec. 311, subd. 1 (McKinney 1969), which required appeals to be brought within thirty days of "the performance of the act complained of." N.Y.Admin.Code tit. 8, Sec. 275.16 (1986). The Commissioner dismissed Fay's appeal, asserting that the appeal was brought "long after the prescribed time," App. at 155, and refused to excuse the failure to bring a timely appeal because Fay had failed to explain the reasons for the delay. See N.Y.Admin.Code tit. 8, Sec. 275.16 ("The commissioner ... may excuse a failure to commence an appeal within the time specified for good cause shown."). The Commissioner also noted that Fay's ex-wife was a necessary party who should have been joined in the appeal.
 
 
 10
 The Commissioner did not confine his observations to procedural matters, however. He also stated that Fay's request to receive copies of all communications sent by the school to his ex-wife would place "an unreasonable burden" on the school district. App. at 156.
 
 
 11
 Fay brought an Article 78 proceeding to annul Commissioner Ambach's ruling. See N.Y.Civ.Prac.Law Secs. 7801-06 (McKinney 1981 & Supp.1986). The New York Supreme Court dismissed the proceeding. The court noted in a brief memorandum decision that it could "not substitute its judgment [for that of the Commissioner] unless it is found that the determination reviewed is unlawful, arbitrary, unreasonable or ... constitutes an abuse of discretion." App. at 161. After citing two New York cases as authority for this standard of review, the court ambiguously concluded: "It is sufficient to here note that the determination of the Commissioner is clearly supported by [a] rational basis." Id. The opinion did not state whether the "rational basis" referred to was the procedural aspect or the substantive aspect of the Commissioner's ruling. In January 1983 the Appellate Division of the New York Supreme Court dismissed Fay's appeal.
 
 
 12
 In August 1983 Fay brought this action for damages and injunctive relief on behalf of himself and his children. The complaint alleged that the school district, the superintendent (in his official capacity) and Commissioner Ambach violated Fay's statutory rights under FERPA, his constitutional right to control the upbringing of his children and his constitutional right to equal protection of the laws. The complaint was later amended to include a pendent state law claim against the school district for violating Fay's rights as a joint custodial parent. The complaint did not state what legal theory the Fay children relied on.
 
 
 13
 When discovery was complete the parties filed cross-motions for summary judgment. After receiving briefs and hearing argument on the motions, the district court issued a thorough memorandum decision and order dismissing Fay's constitutional claims and granting partial summary judgment to Fay on the other two claims. The court rejected the defendants' argument that this section 1983 action was barred by res judicata and collateral estoppel, reasoning that there had been no adjudication in a state tribunal on the merits of Fay's claims. The court reasoned that Commissioner Ambach relied solely on procedural grounds to dismiss Fay's claims and that the New York Supreme Court simply reaffirmed that procedural dismissal in the Article 78 proceeding.
 
 
 14
 Treating Commissioner Ambach's brief discussion of the merits of Fay's administrative appeal as "the equivalent of obiter dicta," App. at 348, the court concluded that the Commissioner's procedural dismissal had not established a substantive state policy on the rights of joint custodial parents to receive school notices. In the absence of such a policy, which the court saw as the sole basis for Fay's claims against the Commissioner, the court dismissed those claims.
 
 
 15
 Turning to Fay's due process claim, the district court noted that a parent has a fundamental interest in his child's upbringing. See Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972); Meyer v. Nebraska, 262 U.S. 390, 399-400, 43 S.Ct. 625, 626-27, 67 L.Ed. 1042 (1923). The court, relying on the representation of the school district's attorney that "there are various things ... that are available to Dr. Fay any time he wants to walk by and pick them up," App. at 322, found that the school district had not "denied plaintiff the ability to inspect and review any and all documents relating to his children's education." Id. at 351. The district court, therefore, treated the legal question to be decided on summary judgment as whether the school district had a "constitutional duty to mail [all documents] to each parent." Id. (emphasis added). The court held that no such duty exists. Id. The court reasoned that the school district did not deprive Fay of the right to control his children's upbringing, but rather only taxed Fay's "convenience" in exercising that right. Id. at 352-53.
 
 
 16
 The district court summarized Fay's equal protection claim as being that the school district's policy " 'discriminate[s] against men, denying them the same information which is sent to women.' " App. at 350 (quoting Memorandum in Support of Plaintiffs' Motion for Summary Judgment at 18). The district court found no facts in the record to support a finding of discriminatory intent and dismissed the claim.
 
 
 17
 The school district has argued both here and below that FERPA does not give rise to a private cause of action either by itself or under section 1983. The district court rejected the school district's argument. Although FERPA does not create a separate cause of action, the court held that there is a private cause of action under section 1983 for violations of FERPA. The court found that the school district "tacitly conceded" that it had refused to allow Fay access to his children's education records from May 1980 until April 1981. App. at 354. The court then held that this refusal established liability under section 1983, but awarded only nominal damages, finding that "plaintiff has failed to establish any compensable injury from this eleven-month denial of access." App. at 358.
 
 
 18
 The district court granted substantial relief on Fay's pendent state law claim that his parental joint custody rights had been violated. Judge Miner noted that "[u]nder New York law, joint custody includes 'giving to both parents an equal voice in the children's education, upbringing, and general welfare.' " Id. at 360 (quoting Odette R. v. Douglas R., 91 Misc.2d 792, 399 N.Y.S.2d 93, 96 (Fam.Ct.1977)). Rejecting the school district's argument that it was not a party to the separation agreement, Judge Miner reasoned that the school district "should not be permitted to ignore the rights that [the agreement] granted to plaintiff and to choose the parent with whom [the school district wishes] to communicate." Id. Judge Miner analogized this case to Page v. Rotterdam-Mohonasen Central School District, 109 Misc.2d 1049, 441 N.Y.S.2d 323, 325 (Sup.Ct.1981), a case where a joint custodial father was held to have the right to see education records regarding his children. Quoting the opinion in Page, which he had authored as a justice of the New York Supreme Court, Judge Miner asserted that school districts must make education information available "to both parents of every school child fortunate enough to have two parents interested in his welfare." App. at 360-61 (quoting Page, 441 N.Y.S.2d at 325). Judge Miner, therefore, directed the defendants to place Fay on the school's mailing list and "forward to him at his expense all information it otherwise mails to the children's household." App. at 361.
 
 
 19
 Fay appeals from the dismissal of the claims against Commissioner Ambach, the dismissal of his claim for the violation of his right to control his children's upbringing and the award of nominal damages. The school district cross-appeals, renewing its arguments that this action is barred by the Eleventh Amendment and by the doctrines of res judicata and claim preclusion, that there is no private cause of action under section 1983 for violations of FERPA and that it is not bound by the separation agreement between Fay and his ex-wife. We shall discuss the Eleventh Amendment first.
 
 DISCUSSION
 A. Eleventh Amendment
 
 20
 The school district's claim that this action is barred by the Eleventh Amendment is without merit.
 
 
 21
 The Eleventh Amendment affirms the fundamental principle that sovereign immunity limits the grant of judicial authority contained in Article III of the Constitution. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). Suits by a citizen against his own state are also barred except when the state consents to be sued. Hans v. Louisiana, 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890); Pennhurst, 465 U.S. at 98, 104 S.Ct. at 906. This jurisdictional bar operates "when 'the state is the real, substantial party in interest.' " Id. at 101, 104 S.Ct. at 908 (quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). The state is usually the substantial party in interest when satisfaction of a judgment in a suit for money damages would require payment from the state treasury. See Quern v. Jordan, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); McClary v. O'Hare, 786 F.2d 83, 89 (2d Cir.1986). The Eleventh Amendment does not, however, bar suits for prospective injunctive relief from unconstitutional actions by state officials. Pennhurst, 465 U.S. at 102-03, 104 S.Ct. at 909; Edelman v. Jordan, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974); see Ex parte Young, 209 U.S. 123, 167, 28 S.Ct. 441, 457, 52 L.Ed. 714 (1908).
 
 
 22
 The school district argues that the State of New York is the real party in interest in this case because the school district "is a branch of state government charged by the state with the local administration of its educational system." Br. of Appellees-Cross-Appellants South Colonie Central School District and Thomas P. Mitchell at 6. As we explain more fully below, however, the school district has not established that payment of money damages to Fay will come directly from the state treasury or demonstrated why it should be viewed as an alter ego for the state. See Forman v. Community Services, Inc., 500 F.2d 1246, 1256 (2d Cir.1974), rev'd on other grounds sub nom. United Housing Foundation v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). We conclude that the school district is not entitled to Eleventh Amendment immunity.
 
 
 23
 Inferior government bodies do not share in Eleventh Amendment immunity simply because they receive state funds. Turano v. Board of Education, 411 F.Supp. 205, 208-09 (E.D.N.Y.1976). Moreover, being a steward of state education policy does not make the school district an alter ego of the state and the school district's argument on this point is singularly unpersuasive. See Forman, 500 F.2d at 1256 (agency not alter ego of state where it has authority to sue and be sued and has no eminent domain power and state is not liable for debts of the agency).
 
 
 24
 State action for purposes of the Fourteenth Amendment is not equal to being the state for purposes of the Eleventh Amendment. Cf. Edelman, 415 U.S. at 667 n. 12, 94 S.Ct. at 1358 n. 12 ("while county action is generally state action for purposes of the Fourteenth Amendment, a county defendant is not necessarily a state defendant for purposes of the Eleventh Amendment"). The school district cites only a single case discussing whether a school district is entitled to Eleventh Amendment immunity but in that case the court rejected a school district's immunity claim. See Br. of Appellees-Cross-Appellants at 7; Turano, 411 F.Supp. at 209. We conclude that no immunity is applicable here.
 
 B. Claim and Issue Preclusion
 
 25
 Under the doctrine of res judicata, or claim preclusion, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Department Stores v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). The doctrine " 'is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts....' " Id. at 401, 101 S.Ct. at 2429 (quoting Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299, 37 S.Ct. 506, 508, 61 L.Ed. 1148 (1917)).
 
 
 26
 Federal courts, in adjudicating suits under section 1983, must give the same preclusive effect to a state court's judgment as courts of that same state would give the judgment. Migra v. Warren City School District Board of Education, 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984); 28 U.S.C. Sec. 1738 (1982). The school district and Commissioner Ambach both argue that Fay's unsuccessful administrative appeal and Article 78 proceeding preclude litigation of Fay's claims in the federal courts. This argument is without merit.
 
 
 27
 New York courts employ transactional analysis to determine whether a claim is precluded by a previous final judgment, viewing a claim or cause of action as coterminous with the transaction regardless of the number of substantive theories or variant forms of relief available to the plaintiff. Smith v. Russell Sage College, 54 N.Y.2d 185, 445 N.Y.S.2d 68, 71, 429 N.E.2d 746, 749 (Ct.App.1981). A cause of action arises from the "same transaction" and is barred by the judgment in a prior proceeding "where the same foundation facts serve as a predicate for each proceeding." Reilly v. Reid, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 649, 379 N.E.2d 172, 176 (Ct.App.1978).
 
 
 28
 The same foundation facts that served as a predicate for the administrative appeal and the Article 78 proceeding serve as a predicate for this case. The question, therefore, is whether either the Commissioner's determination of Fay's administrative appeal or the disposition of the Article 78 proceeding bars this action.
 
 1. Commissioner's Decision
 
 29
 New York courts give limited preclusive effect to prior administrative determinations. Ryan v. New York Telephone Co., 62 N.Y.2d 494, 478 N.Y.S.2d 823, 825-26, 467 N.E.2d 487, 489-90 (Ct.App.1984). Accordingly, we should too. Preclusive effect is limited to "quasi-official determinations" rendered pursuant to the agency's adjudicatory authority, where the agency employed "procedures substantially similar to those used in a court of law." Id. The administrative determination is more likely to be accorded effect where the agency acted in the capacity of factfinder. University of Tennessee v. Elliott, --- U.S. ----, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986); United States v. Utah Construction & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) (preclusive effect given to administrative agency's findings of fact); see also Venes v. Community School Board of District 26, 43 N.Y.2d 520, 402 N.Y.S.2d 807, 809-10, 373 N.E.2d 987, 988-90 (Ct.App.1978) (preclusive effect to decisions rendered in agency's "quasi-judicial" authority). The record does not indicate that any factfinding proceedings were held during Fay's administrative appeal, however, and thus our review is not as deferential as it otherwise would be.
 
 
 30
 An essential predicate to giving a prior judgment preclusive effect is that the prior judgment be "on the merits." See Gengarelly v. Glen Cove Urban Renewal Agency, 69 A.D.2d 524, 418 N.Y.S.2d 790, 791 (2nd Dep't 1979). The school district contends here that Commissioner Ambach's dismissal of Fay's administrative appeal was on the merits because a dismissal for failure to observe a statute of limitations is accorded preclusive effect by the New York courts. See DeCrosta v. A. Reynolds Construction and Supply Corp., 41 N.Y.2d 1100, 396 N.Y.S.2d 357, 359, 364 N.E.2d 1129, 1130 (Ct.App.1977). The limitations period applied by the Commissioner, however, was contained in a regulation promulgated by the Commissioner pursuant to his authority to regulate the practice of administrative appeals. See N.Y.Educ.Law Sec. 311, subd. 1 (McKinney 1969). New York courts view this regulation as a rule of practice and not as a statute of limitations. See Board of Education of Central School District No. 2 v. Nyquist, 60 Misc.2d 967, 304 N.Y.S.2d 441, 448 (Sup.Ct.1969), rev'd on other grounds, 36 A.D.2d 199, 319 N.Y.S.2d 661 (3rd Dep't 1971); accord, Healey v. Nyquist, 63 A.D.2d 1040, 405 N.Y.S.2d 788, 789 (3rd Dep't 1978). We thus conclude that the dismissal of Fay's administrative appeal was not on the merits and does not bar this suit.
 
 
 31
 Our conclusion that the dismissal of Fay's administrative appeal was not "on the merits" is further supported by the policies that underlie the doctrines of issue and claim preclusion. As the New York Court of Appeals has noted, "In properly seeking to deny a litigant two 'days in court', courts must be careful not to deprive him of one." Reilly, 407 N.Y.S.2d at 648, 379 N.E.2d at 175 (citation omitted). It is entirely unclear from the record before us whether the administrative proceedings in this case were equivalent to a "day in court" or included procedures substantially similar to those used in a court of law. Ryan, 478 N.Y.S.2d at 825-26, 467 N.E.2d at 489-90. Moreover, giving broad preclusive effect to a thirty day limitations period might implicate concerns for procedural due process that extend beyond the considerations of federalism and comity underlying Migra.
 
 2. Article 78 Proceedings
 
 32
 The school district argues that the Article 78 proceedings should bar this action, asserting that Fay litigated his substantive due process claims in those proceedings. Even if Fay's claims for injunctive relief under section 1983 were not litigated in the Article 78 proceedings, they could have been litigated there. See, e.g., Gargiul v. Tompkins, 790 F.2d 265, 271-72 (2d Cir.1986) (plaintiff required to bring both available constitutional challenges in single Article 78 proceeding); Unger v. Blum, 99 A.D.2d 494, 470 N.Y.S.2d 440, 441 (2nd Dep't 1984) (section 1983 claim adjudicated in Article 78 proceeding); Anderson v. County of Suffolk, 97 A.D.2d 448, 467 N.Y.S.2d 659, 661 (2nd Dep't 1983) (constitutional challenge to administrative regulations could properly be included in Article 78 proceeding). But see Gargiul, 790 F.2d at 276 (Oakes, J., dissenting) (questioning whether New York courts would require bringing of section 1983 claims in Article 78 proceeding).
 
 
 33
 Res judicata does not bar a claim based on the same cause of action, however, if the forum that rendered the prior judgment "did not have the power to award the full measure of relief sought" in a subsequent action. Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir.1986) (emphasis added). The Article 78 court was without power to award damages on Fay's section 1983 claims unless the damages were both "incidental to the primary relief sought" in the Article 78 proceeding and were "such as he might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity." N.Y.Civ.Prac.Law Sec. 7806 (McKinney 1981). A scholarly opinion by Judge Pratt, a former member of the New York State Committee to Advise and Consult with the Judicial Conference on the CPLR, recently noted that "New York courts have not fully articulated a comprehensive test for determining" when damages are "incidental to the primary relief sought" in an Article 78 proceeding. Davidson, 792 F.2d at 278. Judge Pratt went on to note that substantial New York authority does indicate that damages for civil rights violations are not incidental to the primary relief sought in an Article 78 proceeding. Id. But see Saumell v. New York Racing Association, 600 F.Supp. 819, 822-23 (E.D.N.Y.1985) (reasoning that action for damages erroneously brought in Article 78 proceeding could be converted to civil action where such damages would be available). Although Fay could have litigated his claims for injunctive relief in the Article 78 proceeding and is therefore barred from doing so now, he is not barred from pursuing his claims for damages.[1]
 
 
 34
 The school district and the Commissioner would also have us apply the principle of collateral estoppel to preclude Fay and his children from relitigating the issues raised in the Article 78 proceeding. New York courts treat collateral estoppel, or issue preclusion, as "a component of the broader doctrine of res judicata" which permits "the determination of an issue of fact or law raised in a subsequent action by reference to a previous judgment on a different cause of action in which the same issue was necessarily raised and decided." Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 414 N.Y.S.2d 308, 310-11, 386 N.E.2d 1328, 1331 (Ct.App.1979) (emphasis added).
 
 
 35
 Commissioner Ambach dismissed Fay's administrative appeal on procedural grounds. In affirming that dismissal, the memorandum decision in the Article 78 proceeding commented that Commissioner Ambach's determination was "clearly supported by [a] rational basis." App. at 161. It is impossible to tell from this ambiguous comment whether the court was referring to the procedural basis for the Commissioner's decision or to the Commissioner's additional remarks on the merits of Fay's claim. The doctrine of collateral estoppel is, therefore, also inapplicable to this case because the memorandum of the Article 78 court was so vague as to render it impossible to conclude that a resolution of the substantive issues raised by Fay was necessary to reach the decision to dismiss the case. See Gramatan, 414 N.Y.S.2d at 311, 386 N.E.2d at 1331.
 
 C. Liability of Commissioner Ambach
 
 36
 The district court dismissed Fay's section 1983 claims against Commissioner Ambach because the Commissioner's decision on Fay's administrative appeal "did not establish a statewide policy of denying" divorced parents' requests for education records and school notices. App. at 348. Fay argues that the decision implicitly established such a policy and that summary judgment was thus improperly granted to the Commissioner.
 
 
 37
 Even if we were to accept Fay's argument, cf. Lugar v. Edmundson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982) ("state action" and "state actor" principles "collapse into each other when the claim of a constitutional deprivation is directed against a party whose official character is such as to lend the weight of the State to his decisions"), Commissioner Ambach is cloaked with Eleventh Amendment immunity from liability for damages because any judgment against him in his official capacity would be satisfied from the state treasury. See Quern v. Jordan, 440 U.S. at 337, 99 S.Ct. at 1143. Thus, summary judgment was proper insofar as Fay sought damages because New York has not consented to be sued for such damages. County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 105 S.Ct. 1245, 1260, 84 L.Ed.2d 169 (1985); LeGrand v. Evan, 702 F.2d 415, 417 (2d Cir.1983).
 
 
 38
 It is true that state actors are not immune under the Eleventh Amendment against suits for prospective injunctive relief against violations of constitutional rights. See Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir.1985). Injunctive relief on Fay's constitutional claims is barred by res judicata. Fay has not alleged that there is an ongoing FERPA violation. Therefore, injunctive relief against the Commissioner under FERPA would be inappropriate in any event. For these reasons and those more fully explained below, we affirm the dismissal of all of Fay's claims against the Commissioner.
 
 D. Constitutional Claims
 
 39
 Fay has abandoned his claim that the school district's refusal to mail notices to him violates his right to the equal protection of the laws. He does assert, however, that the refusal violates a due process right to control his children's upbringing.
 
 
 40
 Recognizing the existence of such a right is easier than determining its scope. That scope would depend on the extent to which the school district is constitutionally obligated to remove obstacles that prevent Fay from fully exercising his asserted right to control the upbringing of his children. Compare Stanley v. Illinois, 405 U.S. at 651, 92 S.Ct. at 1212 (parents' due process right to control upbringing of children), and Meyer v. Nebraska, 262 U.S. at 400, 43 S.Ct. at 627 (same), with Harris v. McRae, 448 U.S. 297, 316, 100 S.Ct. 2671, 2687, 65 L.Ed.2d 784 (1980) ("although government may not place obstacles in the path of [the exercise of a due process right], it need not remove those not of its own creation"), and Prince v. Massachusetts, 321 U.S. 158, 167, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944) (noting that "the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare").
 
 
 41
 We need not resolve the difficult constitutional questions that Fay's appeal presents. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."). Rather, this is a case where we should abstain "for reasons of comity and common sense" from deciding claims for equitable relief that could be better handled by the state courts that have authority over matrimonial and family matters. Armstrong v. Armstrong, 508 F.2d 348, 350 (1st Cir.1974). To the extent that Fay would have copies of his children's school notices if his ex-wife would abide by their separation agreement (we will assume for present purposes only that she is not abiding by it), this action is a state family law claim brought into federal court. The federal courts have historically been reluctant to resolve family disputes that could be far more efficiently and appropriately resolved by the state courts.
 
 
 42
 Judge Friendly, writing in Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 512-15 (2d Cir.1973), succinctly summed up this history. He first traced the development of the "matrimonial exception" to diversity jurisdiction that grew from Barber v. Barber, 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1858). 490 F.2d at 513. Judge Friendly quoted Justice Holmes' view that " 'when the Constitution was adopted the common understanding was that the domestic relations of husband and wife and parent and child were matters reserved to the States.' " Id. at 514 (quoting Ohio ex rel. Popovici v. Agler, 280 U.S. 379, 383-84, 50 S.Ct. 154, 154-55, 74 L.Ed. 489 (1930). Judge Friendly stated that the scope of this exception has been "rather narrowly confined." 490 F.2d at 514. In Phillips, Nizer, for example, we adjudicated an action for attorneys' fees arising from the appeal of an underlying divorce action and from related conversion and replevin actions. Significantly, the claim for attorneys' fees in Phillips, Nizer arose from actions in several jurisdictions, thus our decision there promoted efficiency by avoiding multiple suits for attorneys' fees.
 
 
 43
 Judge Friendly also observed in Phillips, Nizer that federal courts have enforced alimony awards and have determined whether a state court must give full faith and credit to a sister state's prior divorce decree. Id. at 514; cf. Spindel v. Spindel, 283 F.Supp. 797 (E.D.N.Y.1968) (denying motion to dismiss complaint alleging that Mexican divorce decree was procured by fraud). He went on to note, however, that federal courts have declined to modify alimony awards, child custody arrangements or visitation orders, where state courts have continuing power to provide an effective remedy. Phillips, Nizer, 490 F.2d at 514; see also Goins v. Goins, 777 F.2d 1059, 1063 (5th Cir.1985); Hernstadt v. Hernstadt, 373 F.2d 316, 317 (2d Cir.1967). Judge Friendly reasoned that these matters, although not within the matrimonial exception, are "on the verge," and federal courts may abstain from deciding them. Phillips, Nizer, 490 F.2d at 516.
 
 
 44
 Fay's claims in this case do not fit within the traditional matrimonial exception. Even so, we believe that the claims' proximity to the exception is a "particularly strong" reason for abstaining in this case. See id. In effect, Fay asks us to relieve his ex-wife of duties imposed by their separation agreement, duties which the New York courts have a continuing power to modify or enforce. Furthermore, in formulating effective relief on Fay's claims, a federal court would be obliged to declare which notices and memoranda are essential to Fay's exercise of the right to control his children's educational destiny. In doing so the court would need to consider the best interests of the Fay children and the allocation of burdens among Fay, the school district and Fay's ex-wife. Continuing oversight of an injunction might obligate the federal court to interpret the joint custody provisions of the separation agreement to determine such matters as whether Fay or his ex-wife has the exclusive authority to sign waivers and permission slips.
 
 
 45
 The New York courts have an especially strong interest and a well-developed competence to adjudicate these matters. Id; see 13B C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure Sec. 3609 at 461 (1984). They would have ample jurisdiction to do so in any action to enforce or modify the divorce decree. Yet, Fay has made no direct effort to vindicate his rights under the separation agreement in the New York courts.
 
 
 46
 Our abstention in this case is not precluded by our recent decision in Giardina v. Fontana, 733 F.2d 1047 (2d Cir.1984). In that case we held that abstention was inappropriate in a diversity action for declaratory relief or for the rescission of an assignment of an interest in a decedent's estate because the action was not on the verge of the "probate exception" to the federal court's diversity jurisdiction, no special state expertise was required to determine whether an assignment had been induced by fraud and the state probate court had refused to entertain the plaintiff's claims. Id. at 1051-52. The action in Giardina was also deemed not to contain any " 'controlling or obscure question[s] of state law.' " Id. at 1051 (citation omitted). The issue in Giardina was "a simple and largely factual question involving well-settled principles of state law." Id.
 
 
 47
 By contrast, in this case, formulating an order for relief would require consideration of the Fay children's "best interests" and of the extent, if any, to which Fay's ex-wife would, in effect, be relieved of her duties under the separation agreement. New York family law would be controlling on these two issues. That law may not be "obscure," but it is a body of law with which "federal judges are more than ordinarily unfamiliar," because of its proximity to the matrimonial exception. Phillips, Nizer, 490 F.2d at 515. Furthermore, it is an emerging body of law insofar as it relates to the relationships among joint custodial divorced parents, their children and the children's educators. See Foster & Freed, Joint-Custody Legislation Finds Firm Support in Majority of States, Nat'l L.J., Apr. 28, 1986, at 25, col. 1 ("During the 1970s and the 1980s the drive for 'joint' or 'shared' custody accelerated."). "Reading the [New York] statutes and the [New York] decisions as outsiders without special competence in [New York] law, we would have little confidence in our independent judgment regarding the application of that law to the present situation." Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 499, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941).[2]
 
 
 48
 We, therefore, dismiss those parts of Fay's complaint that seek compensatory relief under section 1983 for the alleged burdening of his due process right to control the upbringing of his children. We note, however, that Fay will have an opportunity on remand of his FERPA claim to prove damages similar to those sought under his due process claim. We now turn to the FERPA claim.
 
 E. The FERPA Claim
 
 49
 The school district argues that the district court erred in concluding that Fay could assert a cause of action under section 1983 for the school district's violation of FERPA between May 1980 and April 1981. This argument is without merit. Fay claims that the district court erred in awarding him only nominal damages for the FERPA violation. This claim has merit and we remand this portion of the complaint for further proceedings.
 
 
 50
 FERPA denies federal funds to a school "which has a policy of denying ... the parents of students who are or have been in attendance at [the school] the right to inspect and review the education records of their children." 20 U.S.C. Sec. 1232g(a)(1)(A) (1982). See also id. at Sec. (a)(4)(A) & (B) (definition of education records). The statute requires that the "Secretary ... take appropriate actions to enforce" its provisions. Id. at Sec. 1232g(f).
 
 
 51
 FERPA itself does not give rise to a private cause of action. Girardier v. Webster College, 563 F.2d 1267, 1276-77 (8th Cir.1977). Fay does not rely on a private cause of action under FERPA. Instead, he asserts the FERPA violation as the basis for a claim under section 1983. See Maine v. Thiboutot, 448 U.S. 1, 4-8, 100 S.Ct. 2502, 2504-06, 65 L.Ed.2d 555 (1980). The district court correctly determined that FERPA creates an interest that may be vindicated in a section 1983 action because Congress did not create so comprehensive a system of enforcing the statute as to demonstrate an intention to preclude a remedy under section 1983. See Middlesex County Sewerage Authority v. National Sea Clammers Ass'n, 453 U.S. 1, 20-21, 101 S.Ct. 2615, 2626-27, 69 L.Ed.2d 435 (1981); see also Uniformed Firefighters Ass'n, Local 94 v. City of New York, 676 F.2d 20, 22 & n. 4 (2d Cir.) (no private cause of action under section 1983 where statute provided grievance procedure, hearings, investigations within 20 days of receiving complaint), cert. denied, 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982). Although FERPA authorizes extensive enforcement procedures created by regulation, see 34 C.F.R. Secs. 99.60-.67 (1985), these regulations do not demonstrate a congressional intent to preclude suits under section 1983 to remedy violations of FERPA. See National Sea Clammers, 453 U.S. at 20, 101 S.Ct. at 2626; Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981).
 
 
 52
 The school district "tacitly conceded liability" for violating FERPA for the eleven months between May 1980 and April 1981, App. at 358, and it does not contest the entry of summary judgment on the issue of liability. Fay argues, however, that the district court erred in awarding him only nominal damages.
 
 
 53
 Where the amount of damages is not in dispute, a court may award damages on summary judgment. See, e.g., Sygma Photo News v. High Society Magazine, 778 F.2d 89, 91 (2d Cir.1985) (parties stipulated facts necessary for the court to determine damages). In this case, however, the opposing arguments made in papers submitted in connection with Fay's motion to amend the judgment make it clear that there was no agreement among the parties as to what damages Fay suffered as a result of the violation of his right to inspect his children's education records.
 
 
 54
 A section 1983 violation is a species of tort liability in which the level of damages is determined by applying principles derived from tort law. Memphis Community School District v. Stachura, --- U.S. ----, 106 S.Ct. 2537, 2540-44, 91 L.Ed.2d 249 (1986) (citing Carey v. Piphus, 435 U.S. 247, 253, 98 S.Ct. 1042, 1046, 55 L.Ed.2d 252 (1978)). As a leading treatise notes, "even when plaintiff is successful on a Rule 56 motion, the grant is likely only to foreclose the issue of liability and leave any unliquidated claim for damages" for resolution by the factfinder. 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2729 at 235 (1983). Fay is entitled to present evidence to support his claim for compensatory damages and in light of the factual dispute the district court erred in awarding damages for the FERPA violation on summary judgment. We remand the action to the district court for further proceedings to determine the amount, if any, of Fay's damages. See Stachura, --- U.S. ---, 106 S.Ct. at 2544.
 
 F. Pendent State Law Claim
 
 55
 The decision to exercise pendent jurisdiction is vested in the sound discretion of the district court. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725-28, 86 S.Ct. 1130, 1138-40, 16 L.Ed.2d 218 (1966). The discretion is limited, however, by the consideration that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Id. at 726, 86 S.Ct. at 1139.
 
 
 56
 Fay's pendent claim asserted that his rights as a joint custodial parent under New York law had been violated. In order to decide that claim, Judge Miner relied on an opinion which he authored while he was a justice of the New York Supreme Court. We cannot deny that his reading of New York law was "sure-footed." The presence of unresolved questions under New York family law regarding the rights of fathers with joint legal custody of their children, however, should have alerted him to the fact that he need not, and therefore should not, decide the pendent claim. See Pullman, 312 U.S. at 499, 61 S.Ct. at 644. Our determination that the federal courts must abstain from deciding the constitutional claims presented in this case, and the similarity between the pendent and constitutional claims, reinforces our conclusion that the pendent claim should be dismissed.
 
 CONCLUSION
 
 57
 Neither the Eleventh Amendment nor the doctrine of res judicata bars the claim for compensatory damages. Fay's constitutional claims and pendent state law claim are dismissed. His FERPA claim is remanded for further proceedings to determine the amount of compensatory damages. The parties shall bear their own costs.
 
 
 
 [1]
 Fay's failure to litigate his section 1983 claims for injunctive relief in the Article 78 proceeding would not prevent his children from pursuing their separate claims for injunctive relief in a section 1983 action in federal court because they were not parties or privies to the Article 78 proceeding. See Gilberg v. Barbieri, 53 N.Y.2d 285, 441 N.Y.S.2d 49, 51, 423 N.E.2d 807, 809 (Ct.App.1981) (litigant not bound by adverse determination of prior proceeding to which he was not a party or in privity with a party). Under New York law children are not in privity with their parents when there is no indication that the children controlled the prior litigation. See Lucchese v. Rotella, 97 A.D.2d 645, 468 N.Y.S.2d 948, 950 (3rd Dep't), aff'd, 60 N.Y.2d 815, 469 N.Y.S.2d 690, 457 N.E.2d 796 (Ct.App.1983); Willsey v. Strawway, 44 Misc.2d 601, 255 N.Y.S.2d 224, 230 (Sup.Ct.1963), aff'd mem., 22 A.D.2d 973, 254 N.Y.S.2d 830 (3rd Dep't 1964)
 
 
 [2]
 We cite Pullman only in connection with the broad proposition above quoted. We do not, of course, rely on Pullman as the basis for our decision to abstain in this case