OPINION OF THE COURT
Eugene W. Bergin, J.
The plaintiff Board of Education of the Hilton Central School District commenced this action against the defendant Gordon Ambach, as Commissioner of Education of the State of New York, for a declaratory judgment. The plaintiff seeks judicial review of the determination by the defendant Commissioner of Education that an imminent health hazard exists at Hilton’s North wood Elementary School due to the presence in that building of nearly 73,000 square feet of asbestos ceiling materials. The plaintiff School District also challenges the defendant’s determination that the School Asbestos Safety Act (SASA) requires containment or removal of this asbestos material if the *623 said school is to be used for instruction, as well as defendant’s authority to enforce SASA. The defendant Commissioner in his counterclaim also seeks judicial review of the issues involved. Since the facts are not in issue, both parties in this proceeding seek summary judgment. The New York School Board Association has appeared as amicus curiae and has submitted a memorandum of law in support of the plaintiff’s motion for summary judgment.
The Northwood School was built in 1967 and was occupied as an elementary school until June 22, 1982. Asbestos-containing materials were used in the school’s construction in the ceiling area. On July 5, 1979, the legislation referred to as SASA (Education Law, § 430 et seq.) became effective; The law in general required all school districts in the State to inspect their schools; identify asbestos material present and identify potential hazards; estimate the cost necessary to eliminate the hazards; to submit such information to the Commissioner of Education by November 1, 1980, a plan for the “safe, orderly and expeditious containment or removal of any * * * asbestos materials which * * * have been identified as imminent health hazards.” (Education Law, § 436, subds 2, 4.)
In October, 1979, the plaintiff filed with the defendant the required inspection reports indicating that there were exposed areas of asbestos-containing materials in the Northwood School and two other schools. It is uncontroverted that the asbestos material in the Northwood School is “friable”. According to the Environmental Protection Agency “friable material is material that can be crumbled, pulverized or reduced to powder in the hand.” (EPA Asbestos-Containing Material In School Buildings: A Guidance Document [EPA Guidance Document], part I, p 3.) The Northwood School has been inspected by various individuals from the County Health Department who have found that no imminent health hazard exists at the school and that an intensified maintenance and cleaning service was “considered inclusive and effective.” Costs estimates for removal of the material ($719,250), encapsulation ($239,400), containment ($304,500) or combined encapsulation removal ($605,850) were obtained by the District. (The court *624 notes that the District can be reimbursed for 85% of these funds by the appropriate State and Federal funds.)
On December 8, 1981 the State Department of Health concluded that the management program was only an interim measure and that the “friable” condition of the ceilings at North wood constituted an imminent health hazard under SASA requiring removal, containment, or encapsulation as a permanent corrective measure. This determination was reaffirmed following a reinspection by the State Department of Health on June 7, 1982. The defendant insisted that the District adopt a further plan for removal, encapsulation or containment. On June 1, 1982, the Commissioner requested the Attorney-General to take legal action against the District to force compliance with SASA. As a result the District, on June 22,1982, called for a voluntary closing of Northwood School as a classroom facility.
As previously stated this plaintiff contends that an “imminent danger” does not exist, that its management system complies with SASA and that the Commissioner of Education doesn’t have the power to enforce SASA.
It has clearly been established that physical contact with asbestos is not of itself harmful. It is the ingestion or inhalation of microscopic asbestos fibers that has been directly associated with a number of kinds of cancer. The most serious, because of the difficulty of treatment is mesothelioma, a cancer of the lining of various intestinal organs. Asbestos is also known to increase the risk of cancer of the lung, larynx, oral cavity, esophagus, stomach, colon and kidneys. In addition, extended inhalation of asbestos fibers causes asbestosis, a progressive lung disease characterized by a hardening and thickening of the lung tissue. This disease is irreversible, untreatable and often fatal in its later stages.
The United States Congress enacted the Asbestos School Hazard Detection and Control Act of 1980 (US Code, tit 20, §§ 3601-3611), the preamble of which notes that medical evidence suggests that children are particularly vulnerable to environmentally induced cancers; that no safe level *625 of asbestos exposure had been determined; and that asbestos in schools can become damaged or friable causing release of fibers in the air; and the presence in school buildings of friable or easily damaged asbestos creates an unwarranted hazard to the health of school children and employees who are exposed to such materials. This Federal background must be considered when interpreting the New York State School Asbestos Safety Act of 1979.
Subdivision 3 of section 432 of the Education Law states “[ijmminent hazard of health” means that the asbestos material is loose, friable, flaking, dusting, or otherwise shows similiar evidence of damage, deterioration or disturbance.
It is clear to this court that the Legislature recognized the inherent dangers of asbestos material that was friable. That such material when disturbed will put microscopic asbestos fibers in the air. The use of the disjunctive “or” in preparing the definition of “[ijmminent hazard of health” clearly establishes this legislative intent. A proposal which would place an interpretation that plaintiff seeks, that there must be evidence of damage, deterioration or disturbance was rejected by the sponsors of the legislation. As the Court of Appeals has ruled, a court “should not ignore the words of a statute, clear on its face, to reach a different result through judicial interpretation” (Matter of Kleefeld, 55 NY2d 253, 259). As stated previously, the asbestos in the ceiling at North wood Elementary School is friable and therefore is an “imminent health hazard” as defined in SASA.
Having determined that an imminent health hazard does exist the court must now determine whether the District’s management system of using new high efficiency vacuums and increased inspection satisfies the abatement requirements of the statute. Subdivision 3 of section 434 of the Education Law requires local school authorities “To develop a plan for the safe, orderly, and expeditious containment or removal of asbestos materials which pose an imminent health hazard”. Having determined that the friable asbestos ceilings are an imminent health hazard it is the clear duty of the School District to prepare a plan for the containment or removal of this hazard. This must be *626 done to eliminate the possibility of asbestos fibers being allowed to enter the school environment. The management system adopted by the District consists in part of the use of vacuum cleaners removing these particles that form dust on a horizontal surface. The procedure neither prevents asbestos particles in the ceiling from entering the air nor removes these particles of asbestos from being suspended in air. These fibers that pose the danger are microscopic in size and are very difficult to detect even with the most highly technical equipment. The management system thus established by the plaintiff is in effect closing the barn door after the animals have escaped.
The plaintiff contends that the Commissioner of Education does not have the power to enforce the School Asbestos Safety Act. The District points out that the Commissioner sought specific authority which was not included in the legislation and therefore lacks such authority. This contention I find untenable. The Legislature has provided that the Commissioner should be “the chief executive officer of the state system of education” and empowers him to enforce all general and special laws relating to the educational system of the State and empowers him to institute such proceedings to enforce and give effect to any provisions in the Education Law (Education Law, §§ 305, 308). Therefore, specific authority was not required and may be the very reason why the Legislature failed to include the same in the law.
While the court commends the Hilton School District in the actions taken in making repairs, closing the school until this matter could be resolved, and expending moneys to conduct many scientific tests, however, for the reasons stated herein must decide that the Commissioner of Education is entitled on his cross motion for an order of summary judgment. Having so decided, it is not necessary to examine or consider the Commissioner’s argument that this action by the plaintiff was barred by the Statute of Limitations. The plaintiff’s motion for summary judgment is hereby denied and the defendant’s cross motion for summary judgment is hereby granted and the court does decide that an imminent health hazard does exist at the Hilton School District’s Northwood Elementary School.