23-574-cv (L)
*Leise v. Christie*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of August, two thousand twenty-five.

PRESENT:
> JOSEPH F. BIANCO,
> STEVEN J. MENASHI,
> EUNICE C. LEE,
> > *Circuit Judges.*

---

ANDREW LEISE,

> *Plaintiff-Appellee-Cross-Appellant*,

v.

23-574-cv (L);
23-1180-cv (XAP)

KEVIN CHRISTIE, BOR YANG,

> *Defendants-Appellants-Cross-Appellees*,

VERMONT HUMAN RIGHTS COMMISSION,

> *Defendant-Appellee*,

DA CAPO PUBLISHING, INC., JOHN AND
JANE DOE IX,

> *Defendants*.*

---

* The Clerk of the Court is respectfully directed to amend the caption on this Court's docket to be consistent with the caption on this order.

FOR DEFENDANTS-APPELLANTS-
CROSS-APPELLEES AND
DEFENDANT-APPELLEE:

Lisa B. Shelkrot, Langrock Sperry & Wool, LLP, Burlington, VT.

FOR PLAINTIFF-APPELLEE-
CROSS-APPELLANT:

Kaveh S. Shahi, Cleary Shahi & Aicher, P.C., Rutland, VT.

Appeal from orders and a judgment of the United States District Court for the District of Vermont (Christina Reiss, *Chief Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders of the district court, entered on March 24, 2023 and June 29, 2023, and the judgment of the district court, entered on August 10, 2023, are **AFFIRMED** as to the dismissal of the claims against the Vermont Human Rights Commission, as well as Kevin Christie and Bor Yang in their official capacities, and **REVERSED** as to the denial of qualified immunity with respect to the federal substantive due process claim against Christie and Yang in their individual capacities. The appeal is **DISMISSED** as to the challenge to the district court's denial of the motion to dismiss with respect to Leise's state law claims for defamation and invasion of privacy against Christie and Yang. The case is **REMANDED** for further proceedings consistent with this summary order.

Defendants-Appellants-Cross-Appellees Kevin Christie and Bor Yang, members of the Defendant-Appellee Vermont Human Rights Commission ("VHRC"), appeal from the district court's partial denial of their motion to dismiss Plaintiff-Appellee-Cross-Appellant Andrew Leise's amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), and partial denial of their subsequent motion for reconsideration. In particular, Christie and Yang challenge the district court's determination that they are not entitled to: (1) federal qualified immunity as to Leise's individual capacity claim, pursuant to 42 U.S.C. § 1983, alleging a violation of his

substantive due process rights; or (2) qualified immunity under Vermont state law as to Leise's individual capacity claims for defamation and invasion of privacy. Additionally, Leise cross-appeals from the district court's dismissal of his claims against the VHRC on the ground that the agency is entitled to state sovereign immunity. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## BACKGROUND[1]

This case arises out of a landlord-tenant dispute between Dr. Lydia Clemmons and an individual renting an outbuilding on her Vermont farm. In 2017, Dr. Clemmons made a number of calls to the Vermont State Police ("VSP") requesting that officers intervene in various disputes between her and her tenant. In response to these calls, VSP troopers, including Leise, made multiple visits to her property. The complaint alleges that Dr. Clemmons believed VSP troopers disregarded her complaints, and, as a result, she filed a complaint with the VHRC, which is a state commission responsible for investigating discrimination claims, alleging that the VSP troopers discriminated against her on the basis of sex and race.

The VHRC initiated an investigation to determine whether the VSP engaged in discriminatory conduct in connection with Dr. Clemmons's disputes with her tenant and, at the conclusion of the investigation, compiled an "Investigative Report" recommending a finding that the VSP's actions were discriminatory. The Investigative Report explicitly named Leise, one of the troopers who responded to Dr. Clemmons's calls, criticizing his actions and determining that

---

[1] The following facts are taken from Leise's first amended complaint, which we accept as true for purposes of reviewing a Rule 12(b)(6) dismissal. *See Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023).

3

his conduct was discriminatory. Then, on March 25, 2021, the VHRC commissioners voted to find there were reasonable grounds to believe that the VSP had discriminated against Dr. Clemmons. On June 10, 2021, the VHRC released the Investigative Report to Seven Days, a local newspaper operated by Defendant Da Capo Publishing, Inc. ("Da Capo"). On June 23, 2021, Seven Days published an article detailing the VSP's alleged discrimination against Dr. Clemmons and made the Investigative Report public.

In his complaint, Leise alleges that both Christie and Yang participated in providing Da Capo with a copy of the Investigative Report. Leise further alleges that the Investigative Report incorrectly concluded that his conduct was discriminatory based on intentionally false and misleading versions of the facts. He also alleges that the release of the Investigative Report to Da Capo was unlawful because Vermont state law requires that such reports remain confidential; and, by releasing it, the VHRC, Christie, and Yang intentionally and maliciously damaged his reputation, forced him to resign from the VSP, and inhibited his ability to pursue other law-enforcement-related employment. Leise alleges that Yang and Christie authored the false and misleading Investigative Report and later released it to the public so they would receive favorable media coverage to "promote [V]HRC's leadership" and "shape public opinion against VSP and its troopers." Joint App'x at 217, ¶ 5.

On January 18, 2022, Leise initiated the instant action against the VHRC, Yang, and Christie, asserting the following six claims against the defendants in both their official and individual capacities: (1) a liberty-interest procedural due process claim under 42 U.S.C. § 1983; (2) a property-interest procedural due process claim under 42 U.S.C. § 1983; (3) a substantive due process claim for arbitrary, oppressive, and conscience-shocking government action under

4

42 U.S.C. § 1983; (4) an invasion of privacy claim under Vermont law; (5) a defamation claim under Vermont law; and (6) a tortious interference with contract claim under Vermont law.[2]

On April 1, 2022, the VHRC, Christie, and Yang moved to dismiss the complaint, pursuant to Rule 12(b)(6), on the merits and on the basis of various immunity doctrines. In particular, for the claims brought against them in their official capacities, the VHRC, Christie, and Yang asserted the defense of state sovereign immunity as reflected in the Eleventh Amendment. Christie and Yang also asserted absolute and qualified immunity defenses as to all claims brought against them in their individual capacities. The district court granted the motion in part and denied it in part. *See generally Leise v. Vt. Hum. Rts. Comm'n*, No. 22-cv-9, 2023 WL 2633341 (D. Vt. Mar. 24, 2023). In doing so, the district court dismissed all claims brought against the VHRC, Christie, and Yang in their official capacities because it determined that the Commission and its agents were an "arm of the state," and thus entitled to sovereign immunity. *Id.* at *15. In addition, the district court dismissed the Section 1983 and state law claims against Christie and Yang in their individual capacities on absolute immunity grounds to the extent the claims related to the VHRC's investigation, decision-making process, and final determination.[3] The district court, however, denied the motion to dismiss Leise's claims brought against Christie and Yang in their individual capacities under Section 1983 to the extent they related to the release of the Investigative Report to Da Capo, and the state law defamation and invasion of privacy claims. As for these remaining portions of the Section 1983 claims, the district court concluded

---

[2] Plaintiff brought these same claims against Da Capo, and the district court dismissed them. The dismissal of the claims against Da Capo is not at issue in this appeal.

[3] The district court also granted the defendants' motion to dismiss as to the tortious interference of contract claim for failure to state a claim. That determination is not challenged on appeal.

5

that Christie and Yang were not entitled to federal qualified immunity at the motion to dismiss stage because "the record before the court [was] bereft of evidence" that would place the court "in a position to determine, as a matter of law, whether the release of the Investigative Report in this case violates [Vt. Stat. Ann. tit. 9, § 4555(a)(1) (2025)]." *Leise*, 2023 WL 2633341, at *16. With respect to the remaining state law claims, the district court concluded they were adequately pled and that, given the ambiguities in the factual record, it could not determine whether Christie and Yang were entitled to state qualified immunity.

On April 5, 2023, the VHRC, Christie, and Yang filed a motion for reconsideration, asserting, *inter alia*, that the district court failed to adequately address the merits of their motion to dismiss Leise's remaining Section 1983 claims. Upon reconsideration, the district court concluded that Leise had plausibly alleged a substantive due process claim but dismissed his remaining procedural due process claims. *See generally Leise v. Vt. Hum. Rts. Comm'n*, No. 22-cv-9, 2023 WL 4247768 (D. Vt. June 29, 2023). The district court's prior ruling was left unchanged in all other respects. *See id.* This appeal followed.

## DISCUSSION

Christie and Yang challenge the denial of their motion to dismiss and motion for reconsideration as to the federal substantive due process claim and the state law defamation and invasion of privacy claims, arguing that they are entitled to federal and state qualified immunity because releasing the Investigative Report did not violate clearly established law. Leise cross-appeals the district court's dismissal of his claims as to the VHRC and, by extension, the official capacity claims against Christie and Yang, on the ground that the district court erred by

6

concluding that the VHRC is an arm of the state of Vermont and thus entitled to sovereign immunity.[4]

Courts of appeals have the authority under 28 U.S.C. § 1291 to "review all final decisions of the district courts." *Will v. Hallock*, 546 U.S. 345, 347 (2006) (internal quotation marks and citation omitted). "[A] district court's denial of a motion to dismiss, which leaves the controversy pending, is not, technically, a final decision within the meaning of [Section 1291]." *Chasser v. Achille Lauro Lines*, 844 F.2d 50, 52 (2d Cir. 1988). However, under the collateral order doctrine, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Accordingly, we may review a decision denying a motion to dismiss "when the dismissal motion is based on [an] assertion of . . . qualified immunity, to the extent that the denial turns on issues of law." *Hill v. City of New York*, 45 F.3d 653, 659–60 (2d Cir. 1995). By contrast, "[i]f a factual determination is a necessary predicate to the resolution of whether immunity is a bar, review is postponed and we dismiss the appeal." *Brown v. Halpin*, 885 F.3d 111, 117 (2d Cir. 2018) (per curiam) (internal quotation marks and citation omitted). "We review a district court's denial of qualified immunity on a motion to dismiss de novo, accepting as true the material facts alleged in the complaint and drawing all reasonable inferences in plaintiff['s] favor." *Garcia v. Does*, 779 F.3d 84, 91 (2d Cir. 2015) (internal quotation marks and citation omitted). Issues of qualified immunity should be "resolv[ed] . . . at the earliest possible stage [of the] litigation."

---

[4] After the district court dismissed Leise's claims against the VHRC, it entered partial final judgment for the VHRC, pursuant to Federal Rule of Civil Procedure 54(b). We therefore have jurisdiction to hear Leise's cross-appeal of that partial judgment. *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 322–23 (2d Cir. 2018); Fed. R. Civ. P. 54(b).

*Horn v. Stephenson*, 11 F.4th 163, 169 (2d Cir. 2021) (last alteration in original) (internal quotation marks and citation omitted).

## I. Federal Qualified Immunity

Christie and Yang contend that the district court erred in denying them qualified immunity as to Leise's substantive due process claim. We agree. Leise's substantive due process claim is based on the allegation that releasing the Investigative Report violated Vermont law. Because Vermont law is ambiguous as to whether releasing the Report was prohibited, Christie and Yang did not violate a clearly established federal right.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A qualified immunity analysis considers whether: "(1) . . . the official violated a statutory right or constitutional right, and (2) . . . the right was 'clearly established' at the time of the challenged conduct." *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (alterations adopted) (internal quotation marks and citation omitted). "This requires that controlling authority or a robust consensus of cases of persuasive authority have recognized the right at issue." *Linton v. Zorn*, 135 F.4th 19, 32 (2d Cir. 2025) (internal quotation marks and citation omitted). In other words, "if reasonable [state officials] could disagree on the legality of the action at issue in its particular factual context, the [official] is entitled to qualified immunity." *Guan v. City of New York*, 37 F.4th 797, 806 (2d Cir. 2022) (internal quotation marks and citation omitted).

8

We have held that an individual has a substantive due process right to be free from government action that shocks the conscience, including "malicious and sadistic abuses of power by government officials, intended to oppress or to cause injury and designed for no legitimate government purpose." *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (internal quotation marks and citation omitted). Here, Leise argues that his substantive due process rights were violated by Christie and Yang because they engaged in oppressive conduct by "deliberately and intentionally devis[ing] a plan that manipulated and falsified" the Investigative Report and "unlawfully released" it. Joint App'x at 280, ¶ 152. Moreover, Leise contends that Christie and Yang are not entitled to qualified immunity because the release of the Investigative Report was unlawful under Vermont law, and thus, the constitutional violation is "clear." As acknowledged by Leise's counsel at oral argument, under this theory, if Christie and Yang reasonably believed that the release of the Investigative Report was not unlawful under Vermont law, then the constitutional right against its release cannot be clearly established. Furthermore, even if the release of the report clearly violated Vermont law, we would separately need to assess whether Leise has plausibly alleged that the violation shocks the conscience such that it clearly violates substantive due process. *See Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019) ("To determine whether a violation of state law overcomes federal qualified immunity, then, the court must determine whether the conduct that violated the state statute also violates clearly established federal law, and this is a distinct and separate inquiry.").

We conclude that the district court erred in denying qualified immunity as to the substantive due process claim because it was reasonable for Christie and Yang to believe that

9

releasing the Investigative Report was not unlawful.[5] Vermont law states that "[e]xcept as provided in this subsection, the [VHRC]'s *complaint files and investigative files* shall be confidential." Vt. Stat. Ann. tit. 9, § 4555(a)(1) (2025) (emphasis added). The subsection later provides that "[i]f the [VHRC] determines that there are reasonable grounds to believe that discrimination has occurred, that determination and the names of the parties may be made public . . . ." *Id.* § 4555(c). Importantly, although these statutory provisions reference the complaint, investigative files, and determination, they make no mention of an investigative report. VHRC rules, however, define the investigative report as an entirely separate type of document from the complaint or the investigative file.[6] 11-1 Vt. Code R. § 1.21 (2025). Indeed, VHRC rules explain that the investigative report is a document that (1) is prepared at the completion of a VHRC investigation, (2) is submitted to the Executive Director of the Commission for approval, and (3) contains "a listing of documents reviewed, witnesses interviewed, a statement of facts, a legal analysis, and a preliminary recommendation to the commissioners." *Id.* By comparison, the investigative file "does not include analysis, such as . . . statistical analysis that the investigator has created with information provided by either party" or "materials submitted by the complainant or gathered by the Commission's intake worker during the intake process," *id.* § 1.34, and the complaint file contains "allegations and complaints," *id.* § 1.7.

---

[5] Because we conclude that Leise lacked a clearly established right to the confidentiality of the Investigative Report, we need not address whether its release, even if not contrary to state law, is a substantive due process violation or whether Liese has plausibly alleged that Christie and Yang in fact violated his constitutional rights. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first").

[6] The VHRC is statutorily authorized to "adopt procedural and substantive rules in accordance with the provisions of [Vermont's Administrative Procedure Act]." Vt. Stat. Ann. tit. 9, § 4553(c) (2025).

In light of the ambiguity under Vermont law about whether an investigative report is confidential, it was reasonable for Christie and Yang to have believed that releasing the Investigative Report was lawful. Because Leise bases his substantive due process claim on the alleged violation of Vermont law, he cannot show that Christie and Yang violated a clearly established federal constitutional right. Accordingly, we conclude that Christie and Yang are entitled to qualified immunity. *See Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 61–62 (2d Cir. 2003) (finding qualified immunity where the federal right at issue was based on unclear Connecticut state conservatorship law and the defendant officers could have reasonably believed their actions were lawful).

## II.    State Qualified Immunity

The parties also dispute whether Christie and Yang are entitled to qualified immunity under Vermont law for Leise's defamation and invasion of privacy claims. As set forth below, we decline to consider the state qualified immunity issue on this appeal given the dismissal of all federal claims and the fact that additional analysis is required to make that determination under Vermont law. *Cf. Kass v. City of New York*, 864 F.3d 200, 213–14 (2d Cir. 2017) (deciding the state law immunity issue where it was identical to the federal law analysis).

Under Vermont law, state officials are entitled to qualified immunity if they were "1) acting during the course of their employment and within the scope of their authority; 2) acting in good faith; and 3) performing discretionary, as opposed to ministerial acts." *O'Connor v. Donovan*, 48 A.3d 584, 587 (Vt. 2012) (alterations adopted) (internal quotation marks and citation omitted). This standard does not "sufficient[ly] overlap" with our federal qualified immunity standard and would require "additional . . . analysis." *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 281–82 (2d Cir. 1999). Indeed, although

11

Christie and Yang argue that they are entitled to qualified immunity under Vermont law for substantially the same reasons as federal law, they acknowledge that "qualified immunity under Vermont law is somewhat differently formulated from federal qualified immunity." Appellants' Br. at 34.

Therefore, under these circumstances, we will remand to the district court to consider, given the dismissal of all claims over which the district court has original jurisdiction, whether to exercise supplemental jurisdiction over the remaining state law claims for defamation and invasion of privacy against Christie and Yang. *See* 28 U.S.C. § 1367(c)(3); *see also Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 304–05 (2d Cir. 2003).

## III.     Sovereign Immunity

On cross-appeal, Leise argues that the district erred by concluding that the VHRC was entitled to state sovereign immunity because the VHRC is an "independent entity," rather than an arm of the State of Vermont (the "State"). Appellee's Br. at 10. We are unpersuaded.

"[A] federal court generally may not hear a suit brought by any person against a nonconsenting State." *Allen v. Cooper*, 589 U.S. 248, 254 (2020). State sovereign immunity precludes "a citizen from suing his own state under federal question jurisdiction." *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001). This immunity "extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).

To determine whether a state entity is an "arm of the state," this Court considers four factors: (1) the extent to which the state would be responsible for satisfying any judgment that might be entered against the defendant entity; (2) the degree of control exercised by the state

12

over the defendant entity; (3) how the entity is referred to in the documents that created it; and (4) whether the entity's function is traditionally one of local or state government. *See Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 135–40 (2d Cir. 2015).

The first and "most important" factor, whether the state must satisfy a judgment against the entity, considers "how the entity is funded and whether the entity's obligations are binding upon the state." *Id.* at 137. Here, we agree with the district court that the source of the VHRC's funding and the State's indemnification obligations to its employees weigh in favor of sovereign immunity. *See Leise*, 2023 WL 2633341, at *12–13. As an initial matter, between eighty-five and ninety percent of the VHRC's budget is appropriated by the Vermont Legislature from Vermont's General Fund. *See* VHRC, Fiscal Year 2024 Budget Request, https://ljfo.vermont.gov/assets/Uploads/65e986c0d9/Human-Rights-Commission-FY24-Budget-Book_012023.pdf (last accessed Aug. 5, 2025) (providing figures from the 2022 and 2023 budgets as passed by Vermont Legislature).[7] Moreover, under Vermont law, the commissioners of the VHRC "shall receive [state] compensation as provided by 32 V.S.A. § 1010" and "shall be entitled to expenses actually and necessarily incurred in the performance of his or her duties." Vt. Stat. Ann. tit. 9, § 4551(d) (2025); *see* Vt. Stat. Ann. tit. 32, § 1010 (2025). The State also classifies VHRC staff as state employees and compensates them as such. *See* State of Vermont Employee Salaries 2025, https://data.vermont.gov/Government/State-of-Vermont-Employee-Salaries/jgqy-2smf/data_preview (last accessed Aug. 5, 2025). Given their

---

[7] The reporting of the budget is required by Vermont statute. *See* Vt. Stat. Ann. tit. 32, § 301(a) (2025). We therefore may take judicial notice of this public record, and others cited in this summary order, as they are published on an official government website. *See Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 299 n.7 (2d Cir. 2022) ("A court may take routine judicial notice of documents retrieved from official government websites." (alteration adopted) (internal quotation marks and citation omitted)); *accord Cangemi v. United States*, 13 F.4th 115, 124 n.4 (2d Cir. 2021) (same).

status as employees, Vermont is statutorily obligated to defend and indemnify these staff members in civil actions that relate to the performance of their duties. *See* Vt. Stat. Ann. tit. 3, § 1101 (2025) (obligation of state to defend state employees); Vt. Stat. Ann. tit. 12, § 5606 (2025) (indemnification of state employees). Finally, "all State agencies, Legislature, departments, State colleges, Judiciary, quasi-State agencies, boards, *commissions*, and employees" must participate in and contribute to the "State Liability Self-Insurance Fund" which covers the payment of "judgments." Vt. Stat. Ann. tit. 29, § 1406(c) (2025) (emphasis added). Taken together, Vermont law supports the district court's conclusion that the first factor favors sovereign immunity.

The second factor, the degree of supervision exercised by the state over the defendant entity, "consider[s] how the governing members of the entity are appointed and whether the state has veto power over the entity's actions." *Leitner*, 779 F.3d at 138. Here, all five commissioners of the VHRC are "appointed by the Governor, with the advice and consent of the Senate." Vt. Stat. Ann. tit. 9, § 4551(a) (2025). Under Vermont law, appointees "serve at the pleasure of the Governor," or, in other words, under the Governor's authority. Vt. Stat. Ann. tit. 3, § 2004 (2025). In addition, the VHRC must submit an annual report to the Vermont Legislature "on the status of Commission program operations, the number and type of calls received, complaints filed and investigated, closure of litigated and nonlitigated complaints, public educational activities undertaken, and recommendations for improved human rights advocacy and activities." Vt. Stat. Ann. tit. 9, § 4553(b) (2025). The VHRC is also required to submit an annual proposed budget to the Legislature. *See* Vt. Stat. Ann. tit. 32, § 301(a) (2025); *see also* VHRC, Fiscal Year 2024 Budget Request, https://ljfo.vermont.gov/assets/Uploads/65e986c0d9/Human-Rights-Commission-FY24-

14

Budget-Book_012023.pdf (last accessed Aug. 5, 2025).  Given this, as the district court correctly concluded, the VHRC is subject to considerable oversight by the State, and therefore, the second factor favors sovereign immunity.

The third factor considers "how [an] entity is referred to in the documents that created it." *Leitner*, 779 F.3d at 139.  Leise argues that this factor weighs against the State because the VHRC is not referred to as an "agency" in the statute that created it.  Appellee's Br. at 49.  This argument misses the mark.  As the district court correctly noted, this inquiry is not focused on the specific title of the agency, but on whether the entity resembles a "state agency" rather than "a municipal corporation or other political subdivision." *Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir. 1996) (internal quotation marks and citation omitted).  Here, the VHRC is classified by Vermont law as a "[c]ommission" and is composed of members appointed by the Governor, with the advice and consent of the Senate, who serve at the Governor's pleasure.  Vt. Stat. Ann. tit. 9, § 4551(a) (2025); *see* Vt. Stat. Ann. tit. 3, § 2004 (2025).  As a State commission, VHRC is accountable to the State government and has statewide jurisdiction.  *See* Vt. Stat. Ann. tit. 9, §§ 4552(b), 4553(a), (b) (2025).  It is not a "unit[] of local government, such as cities and counties." *Woods*, 466 F.3d at 243 (internal quotation marks and citation omitted).  Thus, this factor also weighs in favor of sovereign immunity.

Lastly, the fourth factor looks to "whether the entity's function is state[wide] or local." *Leitner*, 779 F.3d at 139.  Here, the VHRC's function is statewide.  *See* Vt. Stat. Ann. tit. 9, §§ 4552, 4553.  With its statewide jurisdiction, the VHRC's duties include "increas[ing] awareness of the importance of full civil and human rights for each inhabitant of this State" and "recommend[ing] measures designed to protect those rights" throughout the State.  *Id.* § 4552(a).  In addition, the VHRC may "maintain a principal office and such other offices within the State"

15

and "[m]eet and hold hearings at any place within the State." *Id*. § 4553(a)(1), (2). These characteristics of the VHRC are indicative of its status as a state entity.

In sum, the *Leitner* factors support the determination that the VHRC is an arm of the State. Accordingly, the district court was correct in determining that VHRC is entitled to state sovereign immunity and dismissing all claims against the VHRC, as well as those against Christie and Yang in their official capacities.

\*          \*          \*

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, the district court's orders and judgment are **AFFIRMED** as to the dismissal of the claims against the VHRC, as well Christie and Yang in their official capacities, and **REVERSED** as to the denial of qualified immunity with respect to the substantive due process claim against Christie and Yang in their individual capacities. The appeal is **DISMISSED** as to the challenge to the district court's denial of the motion to dismiss with respect to Leise's state law claims for defamation and invasion of privacy against Christie and Yang. The case is **REMANDED** for further proceedings consistent with this summary order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

16